UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


CARLTON TURNER                    CIVIL ACTION NO. 13-cv-2818

VERSUS                            JUDGE WALTER

DAVID THOMAS, ET AL               MAGISTRATE JUDGE HORNSBY


## REPORT AND RECOMMENDATION

**Introduction**

　　Carlton Turner ("Plaintiff") is a self-represented prisoner housed at the David Wade Correctional Center.  He filed this action against Captain David Thomas and Colonel Lonnie Nail based on allegations that Thomas improperly subjected him to chemical spray, after which Plaintiff was held in isolation for several days without a mattress.  Plaintiff faults Nail for not intervening in the use of force or responding to his complaints about the lack of a mattress.

　　Before the court is Plaintiff's Motion for Summary Judgment (Doc. 50) in which he seeks a declaration that Thomas and Nail are liable to him.  Defendants responded with their own Motion for Summary Judgment (Doc. 59) and attacked the chemical spray claim but did not address the lack of mattress claim.  For the reasons that follow, it is recommended that both motions be denied.  It appears that the jury trial requested by all parties will be necessary to resolve this case.

**Excessive Force Claim**

### A. Eighth Amendment; Qualified Immunity

Plaintiff alleges that he was in full restraints and locked in his cell when Captain Thomas unnecessarily sprayed him in the face and neck area with a can of chemical spray. A convicted inmate's claim of excessive force is governed by the Eighth Amendment. The inmate must establish that the force was not applied in a good faith effort to maintain or restore discipline but was inflicted "maliciously and sadistically to cause harm." Hudson v. McMillian, 112 S.Ct. 995 (1992). This standard also applies to claims that prison officials used a chemical agent on an inmate. Baldwin v. Stalder, 137 F.3d 836, 840-41 (5th Cir. 1998); Davis v. Cannon, 91 Fed. Appx. 327 (5th Cir. 2004).

The Baldwin decision observed that each decision is judged on its own facts, but there are several non-exclusive factors that should be considered in assessing whether unnecessary and wanton infliction of pain was used in violation of a prisoner's Eighth Amendment right to be free from cruel and unusual punishment. The listed factors are: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. Baldwin, 137 F.3d at 839.

Defendants challenge the veracity of Plaintiff's claims and assert the defense of qualified immunity. The court determines whether an official is entitled to qualified immunity by asking (1) whether the facts alleged, taken in the light most favorable to the

party asserting the injury, show that the official's conduct violated a constitutional right, and (2) if the allegations could make out a constitutional violation, whether the right violated was clearly established at the time. <u>Mace v. City of Palestine</u>, 333 F.3d 621, 623–24 (5th Cir. 2003).

### B. Plaintiff's Evidence

The parties offer competing summary judgment evidence on how the event unfolded. Plaintiff's motion is supported by a declaration made pursuant to 28 U.S.C. § 1746, which may provide competent summary judgment evidence.[1]   Plaintiff states under penalty of perjury that officers were in the process of restraining him and his cellmate so that they could attend a recreation period when Captain Thomas intervened to stop Plaintiff from going on the yard.  Thomas claimed that Plaintiff's bed was not made.  Plaintiff asked to speak to a ranking officer, which made Thomas angry, and Thomas started cursing and threatening to spray Plaintiff with a chemical agent.  Thomas and the other officers left the cell and closed the door on Plaintiff, who was in full restraints.

Plaintiff's cellmate, Jaime Eraso, states in a Section 1746 declaration that Thomas asked the two men which of them had not made their bed.  Eraso said that both beds were made, so neither prisoner answered.  Thomas then began cursing and asked who slept on the

_____

[1] <u>Cantwell v. Sterling</u>, __ F.3rd __, 2015 WL 3634424, n. 1 (5th Cir. 2015) ("Cantwell offered his testimony under penalty of perjury and declared it to be true and correct, so it must be credited on summary judgment.").

bottom bunk.  Plaintiff said that he did, and Thomas told him he would not be able to go on the yard.  Eraso states that Plaintiff's bed was made just as his was and in accordance with regulations.  Eraso said that as he left the cell he heard Plaintiff ask to speak to a higher rank, to which Thomas responded, "Shut the fuck up before I gas your ass down."

Inmate Carlos McGrew states in a Section 1746 declaration that he was in a cell nearby when he heard a verbal commotion.  He heard only one voice barking and yelling loudly, and it was Captain David Thomas yelling about a bed not being made properly. McGrew states that he was restrained and escorted past Plaintiff's cell on his way to recreation.  He saw Plaintiff "standing calmly at the cell door bars fully restrained" and overheard Thomas tell another officer, "I'ma gas that motherfucker down."

Plaintiff states that Thomas left the tier and returned a few moments later with Sgt. Fryer, who held a camcorder to record a use of force.  Plaintiff quotes Thomas as saying, "You just have to have things your way, huh?"  As Plaintiff responded, Thomas lifted a can of pepper spray and sprayed Plaintiff in the face and neck area.  Plaintiff states that the use of chemical spray was in violation of prison policies that dictate (1) notification of a higher ranking official, who will address an inmate prior to a use of force, and (2) recording the use of force by an officer familiar with the recording equipment.

When Plaintiff attempted to discover any camcorder or security recordings in this case, Colonel Nail submitted an affidavit to the court and testified that "because the chemical agent was utilized on [Plaintiff] before the handheld camera could be set up any video captured on April 2, 2013 was not saved as it did not record the event in its entirety."  Deputy

Warden Angie Huff stated that the video feed from the video surveillance system is purged and recycled from the server every 30 days due to limited storage capacity, so any video surveillance of the tier from the time at issue was automatically purged by the end of June 2013.  It is worth noting that Plaintiff filed a grievance about the use of force on April 8, 2013, just six days after the event.  The response to the grievance included a statement from Colonel Nail and a report from Major Hamiter that gave a version of the event quite different from what Plaintiff alleged in his grievance.  When Huff denied the grievance at the first step, Plaintiff suggested on May 17, 2013 that the statements of Thomas and Nail that she relied on could be clearly refuted by security recordings on the tier.  The Secretary's designee denied the grievance at step two.  There is no indication that prison staff reviewed the security recordings before they were purged or took steps to preserve the evidence.

Inmate Joe N. Goods states in a declaration that he heard Captain Thomas say, "You have to have things your own way," to which Plaintiff replied, "All I want is my yard time." Thomas then said something profane and sprayed Plaintiff with the chemical.  Goods states that Colonel Nail and Major Hamiter could be seen standing at the front of the tier's entrance at the time, but neither entered the tier until after the "gassing" of Plaintiff.  Plaintiff states in his declaration that Colonel Nail then approached his cell and commented to Captain Thomas, 'That must have been a weak can."  Goods corroborates this claim.

Plaintiff was then taken to the lobby, seen by a nurse, and escorted to another housing area.  Plaintiff states that he was not given the opportunity to shower, to decontaminate and rid himself of the irritating and burning chemical.  He contends this is in violation of prison

policy that requires the offer of a shower and, even if it is refused, repeated offerings at 30-minute intervals for two hours.  Inmate Israel Beverly states in a declaration that he was in the area where Plaintiff was taken after the use of spray.  He says that when the officers, including Nail and Thomas, placed Plaintiff in his cell, Beverly did not hear any officer offer Plaintiff a shower.  He also did not hear any officer offer a shower during the two hours that followed.  Beverly says his recollection of the incident is vivid because Plaintiff's face was very red, and Plaintiff complained about how his skin was burning.

### C. Defendants' Evidence

Defendants offer competing summary judgment evidence.  Captain Thomas testifies in an affidavit that he and Sgt. John Fryer entered the cell housing Plaintiff and inmate Eraso to take the leg irons off of Plaintiff.  Thomas does not explain in his affidavit or in the report he filed after the incident why he was removing the leg irons.  Colonel Nail stated in an unsworn statement written during the grievance investigation that Plaintiff was being returned to his cell from the recreation yard when he refused an order to kneel for removal of his leg restraints.  Plaintiff denies that he ever attended recreation and contends that the restraints were being removed after Thomas decided he could not attend recreation because his bed was not made.  In any event, Thomas testifies that he ordered Plaintiff to his knees for removal of restraints, but Plaintiff refused several orders.  Thomas says he then stepped out of the cell, closed the door for safety, and asked Sgt. Fryer to retrieve the video recorder.  Thomas then notified Major Hamiter by telephone.

Thomas testifies that, as he waited on the video recorder, Plaintiff became very loud and belligerent and cursed him.  This disturbance prevented the key room officer from properly monitoring the tier because it interfered with her ability to hear speakers inside the key room.  Sgt. Mary Blagg, the key room guard on duty at the time, testifies in an affidavit that Plaintiff was "cussing loudly and displaying belligerence" toward Thomas "to the extent that I was unable to monitor N1BD tier as required of my post."

Thomas testifies that he gave Plaintiff several direct orders to "hold the noise" and told him that chemical agent would be used if he continued.  Plaintiff did continue hollering and cursing, and Thomas "sprayed offender Turner with a one to two second burst of chemical agent to the facial and neck area."  He says that Fryer arrived afterward with the video recorder activated, and he recorded Plaintiff until his compliance was gained.  Thomas then ordered the cell door opened, and he escorted Plaintiff to the lobby to be seen by the nurse.

Thomas testifies that Plaintiff was given a clean jumpsuit and bed linens.  He was offered a shower but refused.  Thomas testifies that he notified the officer in the new housing area that Plaintiff had refused a shower, and Plaintiff was later offered a shower every 30 minutes for two hours.  He refused each offer.  Thomas states that in 28 years of employment at the prison (he is now retired) he had to use chemical agent less than 10 times.

Colonel Nail testifies in an affidavit that he had no "direct personal knowledge" of the events regarding chemical spray and "was not present when the chemical agent was utilized" on Plaintiff, but was only advised of the event later by Major Hamiter.  He denies making

the statement about the chemical agent being a weak can.  Major Hamiter (not a defendant) testifies in an affidavit that Captain Thomas called him on the telephone to report that Plaintiff refused to be unrestrained and was being loud and belligerent.  Hamiter says that he could clearly hear Plaintiff over the phone.  He also testifies that Plaintiff was offered a shower and refused the initial offer plus one every 30 minutes for the next two hours.

### D. Conclusion

Summary judgment is proper when the movant can demonstrate that there is no genuine dispute of material fact and that he is entitled to judgment as a matter of law.  All facts and inferences must be construed in the light most favorable to the non-movant.  Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 248 (5th Cir. 2008).  There are plainly genuine disputes of material fact with regard to the excessive force claim.

Plaintiff has offered competent evidence that he was wrongly accused of not making his bed, after which he asked to speak to a superior officer about the denial of his recreation privileges.  This request led to an angry outburst and cursing by Thomas, who then used chemical spray on a fully-restrained prisoner who was locked in a cell and not causing a disturbance.  Plaintiff's evidence also depicts Colonel Nail as standing by and allowing this to happen[2] and being directly involved in the denial of a shower for Plaintiff afterward,

---

[2] Bystander liability of an officer may be established where he "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."  Kitchen v. Dallas County, 759 F.3d 468, 480 (5th Cir.2014).  This law has been clearly established for many years.  See Hale v. Townley, 45 F.3d 914, 919 (5th Cir.1995).

Page 8 of  14

which caused Plaintiff to suffer with the burn from the chemical for a significant time. Defendants' evidence, on the other hand, depicts an out of control prisoner yelling and screaming and causing a security concern, which was addressed with a short burst of chemical spray, followed by several offers of a shower that the inmate refused.

A reasonable jury could find under the facts presented by Plaintiff, which must govern for summary judgment purposes[3], that the force was not used to restore discipline but was inflicted maliciously and sadistically to cause harm.  Both Defendants were personally involved in the events to a sufficient extent that neither is entitled to summary judgment on the merits or by way of qualified immunity on the excessive force claim.  The disputed facts also prevent Plaintiff from prevailing on summary judgment.  A trial will be necessary to resolve this claim.

**Denial of Mattress**

Plaintiff's complaint also includes a claim that was the subject of a separate administrative grievance.  He asserts that on April 9, a week after the chemical spray incident, a disciplinary board sentenced him to 10 days of isolation that should have expired on April 19.  Plaintiff alleges that he actually spent from April 10 through May 5 (25 days) in isolation. His principal complaint about the stay in isolation is that, contrary to policy, prison officials deprived him of a mattress during the 25 days, and Colonel Nail did not

---

[3] The court may not assess the credibility of witnesses or weigh the competing evidence when deciding a summary judgment motion. Kitchen, 759 F.3d at 477–78 (prisoner affidavits in excessive force case conflicted with officers' deposition testimony; summary judgment for officers reversed).

remedy the deprivation despite three letters from Plaintiff. (Captain Thomas is not charged with any personal involvement in this matter.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment.  It "does not mandate comfortable prisons," Rhodes v. Chapman, 101 S.Ct. 2392 (1981), but prison officials "must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 114 S.Ct. 1970 (1994).  Only those deprivations that deny "the minimal civilized measure of life's necessities" are sufficiently grave to form an Eighth Amendment violation.  Rhodes, 101 S.Ct. at 2399.

If a prisoner satisfies this objective component of an Eighth Amendment claim, he must also show that a prison official acted with a sufficiently culpable state of mind.  In prison condition of confinement cases, that state of mind is the "deliberate indifference" standard that is often applied in medical care claims. Wilson v. Seiter, 111 S.Ct. 2321, 2326-27 (1991).  A prison official does not run afoul of that standard "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S.Ct. 1970, 1979 (1994).

Plaintiff states in his declaration that on April 10, 2013 at 5:00 a.m., prison officials woke him up, removed the mattress and bedding from his cell and placed it against the wall

outside, where it remained until he was transferred back to his original dorm on May 5, 2013

(25 days later).  Plaintiff states that he wrote three letters to Colonel Nail (dated April 12, 22,

and 29) to complain that he was not being issued a mattress as required by policy, but Nail

took no measures to correct the situation.

Plaintiff filed an administrative grievance on this issue on May 6, 2013, after he was

free from isolation.  Nail wrote in an unsworn statement as part of the investigation that the

10 days of isolation ended on April 19 and there was no indication Plaintiff was required to

remain in isolation beyond that time.  He also stated that there was no indication Plaintiff was

not issued a mattress each day, per policy, and the officers assigned to the housing unit

during that time said they had no knowledge of Plaintiff being denied a mattress or any report

by Plaintiff that he lacked a mattress.  Of course, this unwritten statement is not competent

summary judgment evidence.[4]  The warden denied the grievance based largely on Nail's

statement.  Plaintiff complained to the warden that the security recordings for the tier would

prove his complaint was true, but there is no indication prison officials reviewed the video

or made an effort to preserve it.

It does not appear the Fifth Circuit has issued a published decision that squarely

addresses the constitutionality of a temporary mattress deprivation.  Similar claims have been

---

[4] Mere unsworn written statements do not comply with the requirements of Rule
56.  Okoye v. Univ. of Tex. Houston Health Science Ctr., 245 F.3d 507, 515 (5th Cir.
2001) (employee's unsworn statement "is not competent summary judgment evidence");
Moore v. True Temper Sports, Inc., 523 Fed. Appx. 280 (5th Cir. 2013) (declining to
consider unsworn statements in a summary judgment contest).

addressed in a number of unpublished and district court opinions, with varying results.  See, e.g., Swift v. Huffman, 80 Fed. Appx. 946 (5th Cir. 2003) (judgment for defendants affirmed when prisoner held for two weeks without bedding or a pillow while misconduct investigated); Shorty v. Melton, 338 Fed. Appx. 424 (5th Cir. 2009) (claim of confiscation of bedding for 18 days during the winter, forcing inmate to sleep on concrete slab wearing only shorts, was not frivolous); Phillips v. East, 81 Fed. Appx. 483 (5th Cir. 2003) (denial of mattress, a blanket, and toilet paper for two and one-half days did not support jury verdict for prisoner); Laue v. Gusman, 2014 WL 3733002, *9 (E. D. La. 2014) (collecting cases where deprivation of bedding for two to seven days was found not per se unconstitutional); and Payton v. Gusman, 2013 WL 5530280, *7-8 (E. D. La. 2013) (collecting cases finding that deprivation of a mattress for a limited time was not per se unconstitutional).

To obtain summary judgment on this claim, Plaintiff would have to establish evidence that would entitle him to judgment as a matter of law if this claim against Nail went uncontroverted at trial.  International Shortstop, Inc. v. Rally's, Inc., 939 F.2d. 1257, 1264 (5th Cir. 1991).  Plaintiff has not sustained his heavy burden.  He has presented evidence that he was denied a mattress for several days, and the defendants have not disputed it with their own competent evidence[5], but not enough is known about factors such as Plaintiff's other

---

[5] The only mention Defendants make of the mattress claim in their motion is in their recitation of the facts, where they describe the grievance filed by Plaintiff.  They do not address the claim in their affidavits or specifically attack the merits of the claim in their motion. They have neither disputed Plaintiff's facts on this claim nor shown that they are entitled to summary judgment on it.

bedding material, his clothing, or the temperature in the cell to decide that Nail is liable as a matter of law for not responding the Plaintiff's letters about his lack of a mattress.  There is also no evidence of record that Nail actually received the letters that Plaintiff says he sent. A trial will be required to resolve this claim.

Accordingly,

IT IS RECOMMENDED that Plaintiff's Motion for Summary Judgment (Doc. 50) and Defendants' Motion for Summary Judgment (Doc. 59) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of June, 2015.

Mark L. Hornsby
U.S. Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CARLTON TURNER                      CIVIL ACTION NO. 13-cv-2818

VERSUS                              JUDGE WALTER

DAVID THOMAS, ET AL                 MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Carlton Turner ("Plaintiff") is a self-represented prisoner housed at the David Wade

Correctional Center.  He filed this action against Captain David Thomas and Colonel Lonnie

Nail based on allegations that Thomas improperly subjected him to chemical spray, after

which Plaintiff was held in isolation for several days without a mattress.  Plaintiff faults Nail

for not intervening in the use of force or responding to his complaints about the lack of a

mattress.

Before the court is Plaintiff's Motion for Summary Judgment (Doc. 50) in which he

seeks a declaration that Thomas and Nail are liable to him.  Defendants responded with their

own Motion for Summary Judgment (Doc. 59) and attacked the chemical spray claim but did

not address the lack of mattress claim.  For the reasons that follow, it is recommended that

both motions be denied.  It appears that the jury trial requested by all parties will be

necessary to resolve this case.

**Excessive Force Claim**

### A. Eighth Amendment; Qualified Immunity

Plaintiff alleges that he was in full restraints and locked in his cell when Captain Thomas unnecessarily sprayed him in the face and neck area with a can of chemical spray. A convicted inmate's claim of excessive force is governed by the Eighth Amendment.  The inmate must establish that the force was not applied in a good faith effort to maintain or restore discipline but was inflicted "maliciously and sadistically to cause harm."  Hudson v. McMillian, 112 S.Ct. 995 (1992).  This standard also applies to claims that prison officials used a chemical agent on an inmate.  Baldwin v. Stalder, 137 F.3d 836, 840-41 (5th Cir. 1998); Davis v. Cannon, 91 Fed. Appx.  327 (5th Cir. 2004).

The Baldwin decision observed that each decision is judged on its own facts, but there are several non-exclusive factors that should be considered in assessing whether unnecessary and wanton infliction of pain was used in violation of a prisoner's Eighth Amendment right to be free from cruel and unusual punishment. The listed factors are: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response.  Baldwin, 137 F.3d at 839.

Defendants challenge the veracity of Plaintiff's claims and assert the defense of qualified immunity.   The court determines whether an official is entitled to qualified immunity by asking (1) whether the facts alleged, taken in the light most favorable to the

party asserting the injury, show that the official's conduct violated a constitutional right, and (2) if the allegations could make out a constitutional violation, whether the right violated was clearly established at the time. <u>Mace v. City of Palestine</u>, 333 F.3d 621, 623–24 (5th Cir. 2003).

### B. Plaintiff's Evidence

The parties offer competing summary judgment evidence on how the event unfolded. Plaintiff's motion is supported by a declaration made pursuant to 28 U.S.C. § 1746, which may provide competent summary judgment evidence.[1]   Plaintiff states under penalty of perjury that officers were in the process of restraining him and his cellmate so that they could attend a recreation period when Captain Thomas intervened to stop Plaintiff from going on the yard.  Thomas claimed that Plaintiff's bed was not made.  Plaintiff asked to speak to a ranking officer, which made Thomas angry, and Thomas started cursing and threatening to spray Plaintiff with a chemical agent.  Thomas and the other officers left the cell and closed the door on Plaintiff, who was in full restraints.

Plaintiff's cellmate, Jaime Eraso, states in a Section 1746 declaration that Thomas asked the two men which of them had not made their bed.  Eraso said that both beds were made, so neither prisoner answered.  Thomas then began cursing and asked who slept on the

---

[1] <u>Cantwell v. Sterling</u>, __ F.3rd __, 2015 WL 3634424, n. 1 (5th Cir. 2015) ("Cantwell offered his testimony under penalty of perjury and declared it to be true and correct, so it must be credited on summary judgment.").

bottom bunk.  Plaintiff said that he did, and Thomas told him he would not be able to go on the yard.  Eraso states that Plaintiff's bed was made just as his was and in accordance with regulations.  Eraso said that as he left the cell he heard Plaintiff ask to speak to a higher rank, to which Thomas responded, "Shut the fuck up before I gas your ass down."

Inmate Carlos McGrew states in a Section 1746 declaration that he was in a cell nearby when he heard a verbal commotion.  He heard only one voice barking and yelling loudly, and it was Captain David Thomas yelling about a bed not being made properly. McGrew states that he was restrained and escorted past Plaintiff's cell on his way to recreation.  He saw Plaintiff "standing calmly at the cell door bars fully restrained" and overheard Thomas tell another officer, "I'ma gas that motherfucker down."

Plaintiff states that Thomas left the tier and returned a few moments later with Sgt. Fryer, who held a camcorder to record a use of force.  Plaintiff quotes Thomas as saying, "You just have to have things your way, huh?"  As Plaintiff responded, Thomas lifted a can of pepper spray and sprayed Plaintiff in the face and neck area.  Plaintiff states that the use of chemical spray was in violation of prison policies that dictate (1) notification of a higher ranking official, who will address an inmate prior to a use of force, and (2) recording the use of force by an officer familiar with the recording equipment.

When Plaintiff attempted to discover any camcorder or security recordings in this case, Colonel Nail submitted an affidavit to the court and testified that "because the chemical agent was utilized on [Plaintiff] before the handheld camera could be set up any video captured on April 2, 2013 was not saved as it did not record the event in its entirety."  Deputy

Page 4 of  14

Warden Angie Huff stated that the video feed from the video surveillance system is purged and recycled from the server every 30 days due to limited storage capacity, so any video surveillance of the tier from the time at issue was automatically purged by the end of June 2013.  It is worth noting that Plaintiff filed a grievance about the use of force on April 8, 2013, just six days after the event.  The response to the grievance included a statement from Colonel Nail and a report from Major Hamiter that gave a version of the event quite different from what Plaintiff alleged in his grievance.  When Huff denied the grievance at the first step, Plaintiff suggested on May 17, 2013 that the statements of Thomas and Nail that she relied on could be clearly refuted by security recordings on the tier.  The Secretary's designee denied the grievance at step two.  There is no indication that prison staff reviewed the security recordings before they were purged or took steps to preserve the evidence.

Inmate Joe N. Goods states in a declaration that he heard Captain Thomas say, "You have to have things your own way," to which Plaintiff replied, "All I want is my yard time." Thomas then said something profane and sprayed Plaintiff with the chemical.  Goods states that Colonel Nail and Major Hamiter could be seen standing at the front of the tier's entrance at the time, but neither entered the tier until after the "gassing" of Plaintiff.  Plaintiff states in his declaration that Colonel Nail then approached his cell and commented to Captain Thomas, 'That must have been a weak can."  Goods corroborates this claim.

Plaintiff was then taken to the lobby, seen by a nurse, and escorted to another housing area.  Plaintiff states that he was not given the opportunity to shower, to decontaminate and rid himself of the irritating and burning chemical.  He contends this is in violation of prison

policy that requires the offer of a shower and, even if it is refused, repeated offerings at 30-minute intervals for two hours.  Inmate Israel Beverly states in a declaration that he was in the area where Plaintiff was taken after the use of spray.  He says that when the officers, including Nail and Thomas, placed Plaintiff in his cell, Beverly did not hear any officer offer Plaintiff a shower.  He also did not hear any officer offer a shower during the two hours that followed.  Beverly says his recollection of the incident is vivid because Plaintiff's face was very red, and Plaintiff complained about how his skin was burning.

### C. Defendants' Evidence

Defendants offer competing summary judgment evidence.  Captain Thomas testifies in an affidavit that he and Sgt. John Fryer entered the cell housing Plaintiff and inmate Eraso to take the leg irons off of Plaintiff.  Thomas does not explain in his affidavit or in the report he filed after the incident why he was removing the leg irons.  Colonel Nail stated in an unsworn statement written during the grievance investigation that Plaintiff was being returned to his cell from the recreation yard when he refused an order to kneel for removal of his leg restraints.  Plaintiff denies that he ever attended recreation and contends that the restraints were being removed after Thomas decided he could not attend recreation because his bed was not made.  In any event, Thomas testifies that he ordered Plaintiff to his knees for removal of restraints, but Plaintiff refused several orders.  Thomas says he then stepped out of the cell, closed the door for safety, and asked Sgt. Fryer to retrieve the video recorder.  Thomas then notified Major Hamiter by telephone.

Thomas testifies that, as he waited on the video recorder, Plaintiff became very loud and belligerent and cursed him.  This disturbance prevented the key room officer from properly monitoring the tier because it interfered with her ability to hear speakers inside the key room.  Sgt. Mary Blagg, the key room guard on duty at the time, testifies in an affidavit that Plaintiff was "cussing loudly and displaying belligerence" toward Thomas "to the extent that I was unable to monitor N1BD tier as required of my post."

Thomas testifies that he gave Plaintiff several direct orders to "hold the noise" and told him that chemical agent would be used if he continued.  Plaintiff did continue hollering and cursing, and Thomas "sprayed offender Turner with a one to two second burst of chemical agent to the facial and neck area."  He says that Fryer arrived afterward with the video recorder activated, and he recorded Plaintiff until his compliance was gained.  Thomas then ordered the cell door opened, and he escorted Plaintiff to the lobby to be seen by the nurse.

Thomas testifies that Plaintiff was given a clean jumpsuit and bed linens.  He was offered a shower but refused.  Thomas testifies that he notified the officer in the new housing area that Plaintiff had refused a shower, and Plaintiff was later offered a shower every 30 minutes for two hours.  He refused each offer.  Thomas states that in 28 years of employment at the prison (he is now retired) he had to use chemical agent less than 10 times.

Colonel Nail testifies in an affidavit that he had no "direct personal knowledge" of the events regarding chemical spray and "was not present when the chemical agent was utilized" on Plaintiff, but was only advised of the event later by Major Hamiter.  He denies making

Page 7 of  14

the statement about the chemical agent being a weak can.  Major Hamiter (not a defendant) testifies in an affidavit that Captain Thomas called him on the telephone to report that Plaintiff refused to be unrestrained and was being loud and belligerent.  Hamiter says that he could clearly hear Plaintiff over the phone.  He also testifies that Plaintiff was offered a shower and refused the initial offer plus one every 30 minutes for the next two hours.

### D. Conclusion

Summary judgment is proper when the movant can demonstrate that there is no genuine dispute of material fact and that he is entitled to judgment as a matter of law.  All facts and inferences must be construed in the light most favorable to the non-movant.  Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 248 (5th Cir. 2008).  There are plainly genuine disputes of material fact with regard to the excessive force claim.

Plaintiff has offered competent evidence that he was wrongly accused of not making his bed, after which he asked to speak to a superior officer about the denial of his recreation privileges.  This request led to an angry outburst and cursing by Thomas, who then used chemical spray on a fully-restrained prisoner who was locked in a cell and not causing a disturbance.  Plaintiff's evidence also depicts Colonel Nail as standing by and allowing this to happen[2] and being directly involved in the denial of a shower for Plaintiff afterward,

---

[2] Bystander liability of an officer may be established where he "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."  Kitchen v. Dallas County, 759 F.3d 468, 480 (5th Cir.2014).  This law has been clearly established for many years.  See Hale v. Townley, 45 F.3d 914, 919 (5th Cir.1995).

which caused Plaintiff to suffer with the burn from the chemical for a significant time. Defendants' evidence, on the other hand, depicts an out of control prisoner yelling and screaming and causing a security concern, which was addressed with a short burst of chemical spray, followed by several offers of a shower that the inmate refused.

A reasonable jury could find under the facts presented by Plaintiff, which must govern for summary judgment purposes[3], that the force was not used to restore discipline but was inflicted maliciously and sadistically to cause harm. Both Defendants were personally involved in the events to a sufficient extent that neither is entitled to summary judgment on the merits or by way of qualified immunity on the excessive force claim. The disputed facts also prevent Plaintiff from prevailing on summary judgment. A trial will be necessary to resolve this claim.

**Denial of Mattress**

Plaintiff's complaint also includes a claim that was the subject of a separate administrative grievance. He asserts that on April 9, a week after the chemical spray incident, a disciplinary board sentenced him to 10 days of isolation that should have expired on April 19. Plaintiff alleges that he actually spent from April 10 through May 5 (25 days) in isolation. His principal complaint about the stay in isolation is that, contrary to policy, prison officials deprived him of a mattress during the 25 days, and Colonel Nail did not

---

[3] The court may not assess the credibility of witnesses or weigh the competing evidence when deciding a summary judgment motion. <u>Kitchen</u>, 759 F.3d at 477–78 (prisoner affidavits in excessive force case conflicted with officers' deposition testimony; summary judgment for officers reversed).

remedy the deprivation despite three letters from Plaintiff. (Captain Thomas is not charged with any personal involvement in this matter.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment.  It "does not mandate comfortable prisons," Rhodes v. Chapman, 101 S.Ct. 2392 (1981), but prison officials "must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 114 S.Ct. 1970 (1994).  Only those deprivations that deny "the minimal civilized measure of life's necessities" are sufficiently grave to form an Eighth Amendment violation.  Rhodes, 101 S.Ct. at 2399.

If a prisoner satisfies this objective component of an Eighth Amendment claim, he must also show that a prison official acted with a sufficiently culpable state of mind.  In prison condition of confinement cases, that state of mind is the "deliberate indifference" standard that is often applied in medical care claims.  Wilson v. Seiter, 111 S.Ct. 2321, 2326-27 (1991).  A prison official does not run afoul of that standard "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S.Ct. 1970, 1979 (1994).

Plaintiff states in his declaration that on April 10, 2013 at 5:00 a.m., prison officials woke him up, removed the mattress and bedding from his cell and placed it against the wall

outside, where it remained until he was transferred back to his original dorm on May 5, 2013 (25 days later). Plaintiff states that he wrote three letters to Colonel Nail (dated April 12, 22, and 29) to complain that he was not being issued a mattress as required by policy, but Nail took no measures to correct the situation.

Plaintiff filed an administrative grievance on this issue on May 6, 2013, after he was free from isolation. Nail wrote in an unsworn statement as part of the investigation that the 10 days of isolation ended on April 19 and there was no indication Plaintiff was required to remain in isolation beyond that time. He also stated that there was no indication Plaintiff was not issued a mattress each day, per policy, and the officers assigned to the housing unit during that time said they had no knowledge of Plaintiff being denied a mattress or any report by Plaintiff that he lacked a mattress. Of course, this unwritten statement is not competent summary judgment evidence.[4] The warden denied the grievance based largely on Nail's statement. Plaintiff complained to the warden that the security recordings for the tier would prove his complaint was true, but there is no indication prison officials reviewed the video or made an effort to preserve it.

It does not appear the Fifth Circuit has issued a published decision that squarely addresses the constitutionality of a temporary mattress deprivation. Similar claims have been

---

[4] Mere unsworn written statements do not comply with the requirements of Rule 56. Okoye v. Univ. of Tex. Houston Health Science Ctr., 245 F.3d 507, 515 (5th Cir. 2001) (employee's unsworn statement "is not competent summary judgment evidence"); Moore v. True Temper Sports, Inc., 523 Fed. Appx. 280 (5th Cir. 2013) (declining to consider unsworn statements in a summary judgment contest).

addressed in a number of unpublished and district court opinions, with varying results.  See,

e.g., Swift v. Huffman, 80 Fed. Appx. 946 (5th Cir. 2003) (judgment for defendants affirmed

when prisoner held for two weeks without bedding or a pillow while misconduct

investigated); Shorty v. Melton, 338 Fed. Appx. 424 (5th Cir. 2009) (claim of confiscation

of bedding for 18 days during the winter, forcing inmate to sleep on concrete slab wearing

only shorts, was not frivolous); Phillips v. East, 81 Fed. Appx. 483 (5th Cir. 2003) (denial

of mattress, a blanket, and toilet paper for two and one-half days did not support jury verdict

for prisoner); Laue v. Gusman, 2014 WL 3733002, *9 (E. D. La. 2014) (collecting cases

where deprivation of bedding for two to seven days was found not per se unconstitutional);

and Payton v. Gusman, 2013 WL 5530280, *7-8 (E. D. La. 2013) (collecting cases finding

that deprivation of a mattress for a limited time was not per se unconstitutional).

To obtain summary judgment on this claim, Plaintiff would have to establish evidence

that would entitle him to judgment as a matter of law if this claim against Nail went

uncontroverted at trial.  International Shortstop, Inc. v. Rally's, Inc., 939 F.2d. 1257, 1264

(5th Cir. 1991).  Plaintiff has not sustained his heavy burden.  He has presented evidence that

he was denied a mattress for several days, and the defendants have not disputed it with their

own competent evidence[5], but not enough is known about factors such as Plaintiff's other

---

[5] The only mention Defendants make of the mattress claim in their motion is in
their recitation of the facts, where they describe the grievance filed by Plaintiff.  They do
not address the claim in their affidavits or specifically attack the merits of the claim in
their motion. They have neither disputed Plaintiff's facts on this claim nor shown that
they are entitled to summary judgment on it.

bedding material, his clothing, or the temperature in the cell to decide that Nail is liable as a matter of law for not responding the Plaintiff's letters about his lack of a mattress.  There is also no evidence of record that Nail actually received the letters that Plaintiff says he sent.  A trial will be required to resolve this claim.

Accordingly,

IT IS RECOMMENDED that Plaintiff's Motion for Summary Judgment (Doc. 50) and Defendants' Motion for Summary Judgment (Doc. 59) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of June, 2015.

Mark L. Hornsby
U.S. Magistrate Judge